UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DANNY L. FOSTER,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. CV-09-307-JPH

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 18, 25.) Attorney Rebecca M Coufal represents plaintiff; Special Assistant United States Attorney Thomas M. Elsberry represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** plaintiff's Motion for Summary Judgment and **GRANTS** defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Danny L. Foster (plaintiff) protectively filed for supplemental security income (SSI) on April 26, 2007. (Tr. 67.) Plaintiff alleged an onset date of July 24, 2004. (Tr. 67.) Benefits were denied initially and on reconsideration. (Tr. 42, 48.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before Paul Gaughen on December 9, 2008. (Tr. 23-39.) Plaintiff was represented by counsel and testified at the hearing. (Tr.23-30, 35-38.) Vocational expert K. Diane Kramer also testified. (Tr.30-35.) The ALJ denied benefits (Tr. 9-17) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 50 years old at the time of the hearing. (Tr. 33.) He has a GED and training as an electrician's helper. (Tr. 28, 201, 401.) Plaintiff has work experience as a fertilizer mixer and bagger, a teacher's assistant, an electrician helper, a stacker and laborer, and a refuse collector. (Tr. 77.) Plaintiff alleges anxiety, depression and difficulty sleeping. (Tr. 25, 125.) Plaintiff was laid off from his last job because he got a DUI. (Tr. 36.) He started using drugs at the age of 13 and had long history of self-medicating with drugs and alcohol. (Tr. 26, 30.) Plaintiff testified he no longer uses street drugs or alcohol. (Tr. 26-27.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its

judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii);

20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

However, a finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001.) When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). It is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

If drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since April 26, 2007, the alleged onset date. (Tr. 11.) At step two, he found Plaintiff has the following severe impairments: depressive disorder, anxiety related disorder, personality disorder, and substance use disorder. (Tr. 11.) At step three, the ALJ found that plaintiff's impairments, including the substance use disorders, meet sections 12.04, 12.06, 12.08 and 12.09 of 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 12.).

Because the record contains evidence of substance abuse, the ALJ next determined if plaintiff stopped the substance use, plaintiff would continue to have the following severe impairments: depressive disorder, personality disorder and seizure disorder, whether or not caused by alcohol usage. The ALJ concluded that if plaintiff stopped the substance use, he would not have an impairment or combination of impairments that meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 13.) The ALJ then determined that if plaintiff stopped the substance use:

> [C]laimant would have the residual functional capacity to perform a full range of work at all exertional levels, but he would have nonexertional limitations secondary to his mental impairments. The claimant would be able to perform work that would involve simple and some detailed instructions to understand, remember, and carry out and that would not involve ongoing interaction with supervisors, co-workers, or the public.

(Tr. 14.) At step four, the ALJ found that even if plaintiff stopped the substance use, he would be able to perform past relevant work. (Tr. 17.) The ALJ determined that because plaintiff would not be disabled if he stopped the substance use, plaintiff's substance use disorder is a contributing factor material to the determination of disability. (Tr. 17.) As a result, the ALJ concluded plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of the decision. (Tr. 23.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) failing to call a psychological expert; (2) improperly determining plaintiff's substance use disorder is a contributing factor material to disability; (3) failing to adequately develop the record; (4) making an unsupported credibility determination; and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

(5) failing to consider a lay witness statement. (Ct. Rec. 19 at 11-20.) Defendant asserts the ALJ: (1) was not required to further develop the record; (2) did not have a duty to call a medical expert; (3) properly found plaintiff not credible; (4) did not improperly reject a lay witness statement; and (5) properly analyzed the effect of substance abuse on disability. (Ct. Rec. 26 at 6-19.)

## DISCUSSION

**1.    Credibility**

Plaintiff argues the ALJ failed to properly justify the negative credibility finding. (Ct. Rec. 19 at 16-19.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 4416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)   If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

 If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th

Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ listed a number of reasons for the negative credibility finding. First, the ALJ pointed to objective personality test results which reflect a pattern of exaggeration in plaintiff's endorsement of symptoms. (Tr. 14.) Objective medical evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques is a useful indicator in making reasonable conclusions about the intensity and persistence of symptoms. 20 C.F.R. § 416.929(c)(2). The results of the MMPI-2 administered by Dr. Henry reflect that plaintiff claimed more psychological symptoms than most patients do, which likely reflects a pattern of exaggeration since he does not have a history of unusually severe psychological problems. (Tr. 331.) Although Dr. Henry did not diagnose malingering, he indicated that the validity of plaintiff's self-reported symptoms should be considered questionable. (Tr. 332.) This is a legitimate consideration in making the credibility determination.

Second, the ALJ observed that although plaintiff reports significant problems being around others, the record is inconsistent with such a limitation. (Tr. 15.) In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). A strong indicator of credibility is the consistency of the individual's own statements made in connection with the claim for disability benefits and statements made to medical professionals. S.S.R. 96-7p. Plaintiff admitted he helps seniors with chores and in March 2006, June 2008 and September 2008 he reported being more comfortable around people. (Tr. 15, 27, 166, 254, 262.) Plaintiff indicated he was feeling better about the ability to control outbursts in June 2008 and had no recent anger issues in September 2008. (Tr. 261-62, 251.) Additionally, although plaintiff alleges debilitating depression, in March 2006 his depression was described as being under good control and in September 2008, plaintiff reported he felt good about himself and his life. (Tr. 166, 254.) The factors mentioned by the ALJ are a reasonable interpretation of the evidence and support the credibility determination.

A third reason mentioned by the ALJ in making the negative credibility determination is that

plaintiff engaged in an active lifestyle, suggesting that symptoms of depression, anxiety and personality disorder are not as debilitating as alleged absent the effects of substance abuse. (Tr. 15.) It is reasonable for an ALJ to consider a claimant's activities which undermine claims of disabling symptoms in making the credibility determination. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of functions that are transferable to a work setting, those activities are reasonably considered and may discredit an allegation of disabling symptoms. *See Fair*, 885 F.2d at 603. Plaintiff helped a neighbor with his farm, kept busy getting firewood for winter, worked on his car, and helped senior citizens with chores. (Tr. 167, 256.) Plaintiff stated he was able to cook, chop wood and haul water. (Tr. 27.) Plaintiff also admitted his daily activities include bringing in wood, building a fire, watching the news, doing chores, and shoveling snow. (Tr. 329.) Plaintiff was able to work on his car, go fishing, do outdoor activities, pay bills, and had no problem managing his funds. (Tr. 329.) The ALJ concluded these daily activities, along with other factors discussed above, suggest that plaintiff has the residual functional capacity for work consistent with the RFC. This is a reasonable interpretation of the evidence.

Lastly, the ALJ considered objective evidence inconsistent with plaintiff's allegations. (Tr. 15-16.) While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity and disabling effects of a claimant's condition. *See Rollins*, 261 F.3d at 857. The ALJ noted that Dr. Henry observed no symptoms of anxiety or depression. (Tr. 328.) Plaintiff was alert, oriented, relaxed, with appropriate responses and clear and coherent speech. (Tr. 328.) His scores on the Mini Mental Status Exam reflected no cognitive or neurological impairment, and the Trails A&B results indicated no problems or deficits with cognitive flexibility, visual scanning, or processing speed. (Tr. 329.) Other objective testing revealed no malingering of cognitive or memory impairment, average intelligence, superior ability to rapidly and accurately process visual information, and average memory. (Tr. 329-30.) Dr. Henry concluded, and the ALJ gave weight to the opinion, that although plaintiff's personality disorder traits and mood and anxiety disorder symptoms would be expected to impact his willingness to obtain and sustain employment, plaintiff did not have severe psychiatric

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

symptoms which would keep him from being able to work. (Tr. 332-33.) These objective findings support the ALJ's conclusion that plaintiff's report of symptoms is not entirely credible.

Plaintiff's only specific objection to the ALJ's credibility determination is that plaintiff's reported improvement in social functioning does not mean he can work. (Ct. Rec. 19 at 18.) However, the ALJ did not make his findings on the sole basis that plaintiff reported improvement in social functioning. Improvement in social functioning was just one factor which the ALJ reasonably interpreted as inconsistent with plaintiff's claims of social anxiety so severe that he cannot be around people. Even if the ALJ erred in considering plaintiff's reports of improved social functioning, the ALJ cited other legitimate reasons for rejecting plaintiff's credibility and the error, if any, is harmless.[1] The factors identified by the ALJ constitute clear and convincing reasons supported by substantial evidence and the ALJ did not err.

**2.    DAA Analysis**

Plaintiff seems to assert the ALJ erred by failing to identify plaintiff's limitations without the effects of alcohol abuse.[2] (Ct. Rec. 19 at 14.) However, the ALJ's RFC finding clearly identifies plaintiff's limitations without the effects of alcohol abuse:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels, but he would have nonexertional limitations secondary to his mental impairments. The claimant would be able to perform work that would involve simple and some detailed instructions to understand, remember, and carry out and that would not involve ongoing interaction with supervisors, co-workers, or the public.

(Tr. 14.) Thus, the ALJ did not fail to identify plaintiff's limitations without the effects of substance

---

[1]Harmless error occurs when the error is inconsequential to the ultimate nondisability determination. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

[2]Plaintiff asserts: "In this case is [sic] the ALJ found, without the assistance of a medical expert (ME) that Foster met the listing but that alcohol abuse was material to that finding. The ALJ did not [] (arguably he could not have done this without the assistance of an ME) find what limitations [F]oster would have had without the alcohol abuse nor did the CE or Foster's counselor of many years." (Ct. Rec. 19 at 14.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

use.

Plaintiff also argues that it is "questionable" how much alcohol Foster currently uses or if in fact there is continued abuse of alcohol. (Ct. Rec. 19 at 14.) As noted *supra*, when there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). In this case, there is medical evidence of substance abuse, as well as plaintiff's own admissions. (Tr. 332.) The ALJ noted plaintiff's testimony that he had not used alcohol to excess since July 24, 2007 and that he had not used methamphetamines since September 13, 2005.[3] (Tr. 12, 14, 26-27.) Assuming plaintiff's testimony about drug abuse and alcohol consumption was truthful, it was appropriate for the ALJ to conduct a DAA analysis because the evidence establishes a history of substance abuse and substance abuse during the relevant period. Even if plaintiff's substance abuse was in remission, the finding of disability including the effects of substance abuse is favorable to plaintiff.

Plaintiff suggests there is an ambiguity as to whether plaintiff's substance use was material to the determination of disability and therefore the ALJ should have determined it was not material. (Ct. Rec. 19 at 12-15.) Plaintiff cites a Social Security Administration policy indicating that when mental restrictions and limitations imposed by DAA and the various other mental disorders cannot be separated, a finding of "not material" is appropriate. Social Security Administration EM-96200, "Questions and Answers Concerning DAA from the 07/02/96 Teleconference," Question 27 (August

---

[3] It is noted that a February 2008 counseling intake report indicates plaintiff continued to relapse with alcohol and "last use was a few weeks ago." (Tr. 275.) He also reported drinking six days out of the previous 30 days in March 2008, two days out of the previous 30 days in September 2008, and one day out of the previous 30 days in December 2008. (Tr. 300.) In February 2009, plaintiff stated he last used alcohol to excess in July 2007, but that he would still "rarely" drink a couple of drinks at a time. (Tr. 328.) However, it appears the ALJ accepted plaintiff's report of July 2007 as the last instance of substance abuse. (Tr. 12, 14.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

30, 1996).[4]  The regulations provide that in assessing whether drug and alcohol abuse is material to the determination of disability, the Administration will determine which limitations would remain if drug or alcohol abuse were stopped and whether any of the remaining limitations would be disabling. 20 C.F.R. § 404.1535(b)(2).  Dr. Henry's February 2009 psychological assessment states:

> Most of [plaintiff's] reported elevated mood symptoms (e.g., anger and impulsivity) appear to be more characterologically driven and/or caused by substance use rather than being episodic in nature. . . . Again, it is difficult to determine the degree to which these symptoms are attributable to personality disorder traits, history of and/or continued substance use, and/or a pattern of exaggeration of symptoms.

(Tr. 332.)  Dr. Henry also opined that plaintiff's social anxiety and acute anxiety episodes may decreased with continued abstinence from drug and alcohol use.  (Tr. 336.)  This suggests that Dr. Henry's assessment of limitations takes into account the effects of substance abuse.  Dr. Henry indicated plaintiff's ability to understand, remember and carry out instructions are not affected by his impairments, and that he has some moderate limitation in the ability to interact appropriately with supervisors, co-workers and the public.  (Tr. 336.)  This is consistent with the findings of Dr. Bailey, who opined in July 2007 that plaintiff is capable of simple and some detailed tasks, is able to follow one and two step instructions, and would do best in more isolated environments away from the general public.  (Tr. 233.) The ALJ incorporated those limitations into the RFC and no other limitations are established by the evidence.  Additionally, if a claimant is found disabled with the effects of substance addiction, it is the claimant's burden to prove substance addiction is not a contributing factor material to her disability.  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007). Plaintiff has not met that burden.  As a result, the ALJ's finding that substance abuse is material to the finding of disability is supported by substantial evidence.

---

[4]*Available at*  https://secure.ssa.gov/apps10/public/reference.nsf/links/04292003041931PM. Internal agency policy is not binding on the ALJ or the court, although it is entitled to respect and may be persuasive.  *See Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010); *Clark v. Astrue*, 529 F.3d 1211, 1216 (9th Cir. 2008).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -11

**3.     Medical Expert**

Plaintiff seems to argue that because the ALJ identified evidence of substance abuse and because plaintiff has nonexertional limitations, the ALJ was required as a matter of law to obtain the opinion of a medical expert. (Ct. Rec. 19 at 14.) Plaintiff also suggests that the ALJ "is not competent" to determine that drug and alcohol abuse was material to the determination of disability. (Ct. Rec. 19 at 12.) Plaintiff cites no relevant authority for these arguments, and the court finds none. Administrative law judges may ask for and consider opinions from medical experts on the nature and severity of an impairment. 20 CFR § 404.1527 (2)(iii). There are two instances where the opinion medical expert is required: (1) when equivalence to a listing is at issue at step three; and (2) when the record is ambiguous regarding the onset date. *See* S.S.R. 83-20; S.S.R. 96-6p; *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). Neither of the circumstances requiring the ALJ to obtain the opinion of a medical expert is present in this case.

The regulations also provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination. 20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. 404.1519a. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998) The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). In this case, the ALJ developed the record by obtaining a consultative psychological examination from Dr. Henry to assist in determining plaintiff's functioning around other people. (Tr. 38.) Additionally, the ALJ provided plaintiff with two opportunities to submit written comments about Dr. Henry's opinion, a written statement regarding the applicable facts and law in light of the opinion, any additional records, and written questions addressed to Dr. Henry. (Tr. 63, 65.) Plaintiff also had the opportunity to request a supplemental hearing and to request subpoena of additional witnesses. (Tr. 63, 65.) Plaintiff failed to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

1  request any additional development of the record.  The ALJ was not required seek input from a
2  medical expert because the ALJ was able to make a determination supported by substantial evidence
3  after Dr. Henry's examination.
4        Plaintiff also argues the ALJ  inappropriately substituted his own lay medical opinion for
5  evidence. (Ct. Rec. 19 at 11-12.)  An ALJ must not substitute his medical judgment for a doctor's.
6  *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990).  A typical case of an ALJ impermissibly
7  "playing doctor" is when the ALJ draws medical conclusions themselves about a claimant without
8  relying on medical evidence.  *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000).  Plaintiff fails to
9  specify how the ALJ speculated or substituted his lay opinion for medical evidence.  As noted above,
10 the RFC determination echoes the findings of Dr. Henry and Dr. Bailey.  The ALJ did not include any
11 limitations in the RFC that are not supported by the evidence, nor did the ALJ overlook any
12 limitations established by the record.
13   **4.**    **VA Records**
14       Plaintiff argues the ALJ failed to properly develop the record regarding a reference to
15 treatment records from the VA.  (Ct. Rec. 19 at 15-16.)  There are three brief references to chemical
16 dependency treatment at the VA in the record.  On September 12, 2005, counselor Tonya Stern noted
17 plaintiff "Goes to VA for CD [chemical dependency] treatment ETOH, manageable." (Tr. 170.)  On
18 September 27, 2005, Ms. Stern reported that plaintiff started a counseling session by informing her
19 that his chemical dependency counselor at the VA asked about transferring his chemical dependency
20 services to Pend Oreille County Counseling Services (POCCS) to reduce travel and coordinate
21 services through the same agency.  (Tr. 209.)  Ms. Stern contacted the chemical dependency program
22 manager at POCCS who said plaintiff could be accommodated and that he should sign a release for
23 VA treatment records.  (Tr. 209.)  On October 7, 2005, Ms. Stern noted that plaintiff had called to
24 check on a medication refill and to find out what was going on with chemical dependency treatment.
25 (Tr. 208.)  Ms. Stern informed plaintiff that she had not received records from the VA yet, but when
26 they arrived they would be reviewed and he would be contacted for an admission appointment.  (Tr.
27
28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

208.) The record does not contain any records or information from the VA.[5]

Plaintiff argues that the mention of treatment at the VA triggered the ALJ's duty to obtain VA records. As noted *supra*, the duty to develop the record is triggered when the evidence is ambiguous or inadequate for proper evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150. Plaintiff does not identify any ambiguity or assert any specific inadequacy in the evidence which could be clarified by VA records. There is no suggestion or implication that the VA records could provide more than what is already adequately documented in the record, which is that plaintiff has had substance abuse problem.[6] Plaintiff did not mention the VA records at the hearing or request that the ALJ obtain them. Additionally, the ALJ left the record open for 45 days after the hearing for plaintiff's attorney to submit additional records. (Tr. 38.) As pointed out by defendant, the ALJ also offered plaintiff two additional opportunities to supplement the record after the 45 day period post-hearing. (Tr. 63, 65.) If plaintiff believed the VA records were important to the disability determination, adequate opportunity was provided to seek those records or request that the ALJ do so. Furthermore, the relevant period in this case begins April 26, 2007, the date of application.[7] Since plaintiff had completed the VA chemical dependency program by February 28, 2006, it is reasonable to conclude that the VA records are not relevant to the period under review. As such, the ALJ did not err by failing to obtain the VA chemical dependency records.

**4.     Lay Witness Statement**

Plaintiff argues the ALJ's failure to consider the statement of plaintiff's brother, Larry Dean

---

[5]On a 180 day review form dated February 28, 2006 indicates plaintiff reported, "I have successfully completed the CD Program," although it is not clear whether the chemical dependency program was completed at the VA or at POCCS. (Tr. 174.)

[6]There is no implication or suggestion that plaintiff has a VA disability rating which might trigger the ALJ's duty to develop the record under certain circumstances. *See McLeod v. Astrue*, 634 F.3d 516 (9th Cir. 2011).

[7]The relevant period in an SSI case is the date of application. Benefits are not payable before the date of application. 20 C.F.R.§§ 416.202, 416.501, 416.305, 416.330(a); S.S.R. 83-20.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

Kitchen, requires remand. (Ct. Rec. 19 at 19-20.) An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ must give reasons germane to each witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996). Where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. *Stout*, 454 F.3d at 1056.

Mr. Kitchen completed a form entitled "Function Report - Adult - Third Party" in June 2007. (Tr. 89-102). The form is a check-box form with questions about a claimant's abilities and daily activities with room for comments and explanations. Mr. Kitchen checked boxes indicating plaintiff's condition affects his ability to pay attention, finish something he starts, and handle stress. (Tr. 91.) Mr. Kitchen explained that plaintiff's thoughts wander and "he starts a project then goes to something else and has a number of unfinished projects," and that plaintiff gives up if something gets too stressful. (Tr. 92, 102.) Mr. Kitchen noted plaintiff will leave a crowded store, does not like to be around other people for very long, and gets aggravated and irritated by other people. (Tr. 99-100.) It was also reported that plaintiff lost interest in his hobbies and that plaintiff sometimes will not go outside, or will not come inside even when it is very cold. (Tr. 101.)

The ALJ did not mention Mr. Kitchen's report in the decision. The ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). As noted by defendant, Mr. Kitchen's statement is essentially consistent with the RFC established by the ALJ and is not particularly probative. (Ct. Rec. 26 at 16.) The social limitations and limitation to simple work with some detailed instructions included in the RFC encompass the factors mentioned in Mr. Kitchen's statement. (Tr. 14.) Even if Mr. Kitchen's statement is credited, it would not establish any additional limitations or raise any issues not already addressed by the ALJ. For these reasons, the ALJ did not err by failing to specifically discuss Mr. Kitchen's statement.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 25)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 18)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED May 11, 2011

S/ JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -16